No. 00-015

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 291

302 Mont. 276

14 P.3d 499

STEVE PENGRA, as personal representative of the

Estate of Tamara Pengra, deceased, and STEVEN

PENGRA, on his behalf and as guardian and

conservator for TIFFANY PENGRA,

Plaintiffs and Appellants,

STATE OF MONTANA, acting through its

DEPARTMENT OF CORRECTIONS,

Defendant and Respondent,

and

MONTANA LAW WEEK; and THE HELENA

INDEPENDENT RECORD, THE ASSOCIATED PRESS,

THE BILLINGS GAZETTE, and THE MISSOULIAN,

Intervenors, Respondents, and

Cross-Appellant.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

Honorable Dorothy McCarter, Judge Presiding

COUNSEL OF RECORD:

For Appellants:

Richard J. Pyfer (argued), Small, Hatch, Doubek and Pyfer,

Helena, Montana

For Respondents:

P. Keith Keller (argued) and Michael R. King, Special

Assistant Attorney General, Helena, Montana (State of Montana)

James P. Reynolds (argued) , Reynolds, Motl & Sherwood, Helena

Montana (News organizations)

For Cross-Appellant:

Peter Michael Meloy (argued), Meloy and Morrison, Helena, Montana

(Montana Law Week)

Argued: September 14, 2000

Submitted: September 26, 2000

Decided: November 17, 2000

Filed:

_____

Clerk

2

Chief Justice J. A. Turnage delivered the Opinion of the Court.

¶1 Steve Pengra brought this action against the State of Montana contending that the State's negligent acts and omissions led to the brutal rape and murder of his wife Tamara by a Montana prison probationer. Pengra and the State settled the suit before trial, and Pengra asked the court to seal the settlement agreement. Montana Law Week, the Helena *Independent Record*, The Associated Press, the *Billings Gazette*, and the *Missoulian* (collectively, "the press") were granted permission to intervene in opposition to Pengra's request. The First Judicial District Court, Lewis and Clark County, later denied Pengra's request but sealed the settlement agreement pending this appeal. We affirm that court's decision.

¶2 On appeal, Pengra argues that the District Court erred in denying his motion to seal the settlement agreement because (1) his daughter's and his rights to privacy protect the terms of the agreement; (2) the § 2-9-303, MCA, requirement that settlements of claims against the State must be made available for public inspection violates the personal privacy of an individual; and (3) the Pengras' right to privacy outweighs the public's right to know the terms of the settlement agreement. On cross-appeal, Montana Law Week argues that the court erred in denying its claim for attorney fees.

¶3 Pengra brought this action against the State of Montana on behalf of himself, the estate of his late wife, and their minor daughter. Tentative agreement on a settlement of the case was reached just five days before the scheduled start of a jury trial. At that time, the proprietor of Montana Law Week asked the State's attorney for a copy of the settlement agreement for inclusion in his publication. The information sought is the dollar amount of the settlement and the method of payment thereof.

¶4 While the parties were still working out the details of the settlement, Pengra's attorney presented to the District Court an ex parte motion asking that the terms and conditions of the settlement agreement be sealed. The court set a date for hearing on the motion. Prior to the scheduled hearing, the press moved to be allowed to intervene, and those motions were granted.

¶5 In support of his motion to seal the settlement agreement, Pengra argued that disclosure of the terms of the agreement would be detrimental to his and his daughter's emotional well-being and would interfere with closure and healing for his daughter. At the hearing on the motion, Pengra's attorney hand-delivered to all counsel a supporting affidavit of Michael A. Emerson, Ph.D. However, the affidavit was neither offered into evidence nor filed with the court at that time. The press argued against the motion to seal, based upon the statement in § 2-9-303, MCA, that governmental settlement agreements are public records, and the public's constitutional right to know.

¶6 The following week, the District Court issued a written order denying Pengra's motion to seal the settlement agreement. The court concluded that there was no privacy interest in the amount of monetary compensation the Pengras received under the settlement and held that even if there was a constitutionally-protected privacy right, that right did not clearly outweigh the merits of public disclosure of the settlement agreement. The court denied Montana Law Week's request for attorney fees. Pengra appeals, and Montana Law Week cross-appeals.

## Issue 1

¶7 Did the District Court err in denying Pengra's motion to seal the settlement agreement because (1) Pengra's and his daughter's rights to privacy protect the terms of the agreement; (2) the § 2-9-303, MCA, requirement that settlements of claims against the State must be made available for public inspection violates the personal privacy of an individual; and (3) the Pengras' right to privacy outweighs the public's right to know the terms of the settlement agreement?

¶8 We first address Pengra's contention that his daughter, as a minor, possesses elevated privacy rights under which the terms of the settlement agreement are protected. In general, minors have the same rights as do all other persons.

> **Rights of persons not adults.** The rights of persons under 18 years of age shall include, but not be limited to, all the fundamental rights of this Article unless specifically precluded by laws which enhance the protection of such persons.

Art. II, § 15, Mont. Const. Thus, elevated privacy rights of a minor are not implicit in Montana's Constitution.

¶9 Pengra has cited a number of statutes under which the privacy rights of minors are accorded special, elevated protections (e.g., as to juvenile records and adoption records). The fact that the Legislature has enacted statutes granting minors elevated privacy rights in other areas shows that the Legislature knows how to express its intent to allow for confidentiality of proceedings involving children.

¶10 The Montana Legislature has not, however, provided for elevated privacy rights with regards to settlement documents for children's tort claims against the State. Section 2-9-303, MCA, merely provides:

> (2) All terms, conditions, and details of the governmental portion of a compromise or settlement agreement entered into or approved . . . are public records available for public inspection.

¶11 Pengra refers to discussion in the legislative history of § 2-9-303, MCA, regarding the advisability of including a provision making confidential settlements involving minor children. However, no such provision was enacted. Based on the absence of an elevated-

protection provision in either the Montana Constitution or the statute, we conclude that minors do not have a greater right to privacy than do adults in settlement agreements for tort claims against the State.

¶12 We next look to Pengra's belated claim that the § 2-9-303, MCA, requirement that settlements of claims against the State must be made available for public inspection violates the personal privacy of an individual and is therefore unconstitutional on its face. Pengra did not raise this allegation before the District Court, and it was not articulated before this Court until the reply brief and at oral argument.

¶13 Rule 23(c), M.R.App.P., provides that an appellant's reply brief must be confined to new matter raised in the respondent's brief; thus, an appellant may not raise new issues in a reply brief. *See Denend v. Bradford Roofing and Insulation* (1985), 218 Mont. 505, 509-10, 710 P.2d 61, 64. We will not address the merits of an issue presented for the first time in a reply brief on appeal. *Loney v. Milodragovich, Dale & Dye, P.C.* (1995), 273 Mont. 506, 512, 905 P.2d 158, 162. Accordingly, we do not further consider whether § 2-9-303, MCA, violates the right to privacy and is thus unconstitutional on its face.

¶14 Still remaining is Pengra's as-applied challenge to the disclosure provision of § 2-9-303, MCA: his contention that the statutory disclosure provision is superseded by his and his daughter's rights of individual privacy. We have recognized that statutes conflicting with the Montana Constitution are generally subordinate to the constitution and if possible must be interpreted to harmonize with it. *See Engrav v. Cragun* (1989), 236 Mont. 260, 263, 769 P.2d 1224, 1226. This leads inexorably to the larger question concerning the conflict here presented between the constitutional right to privacy and the constitutional right to know.

¶15 The two provisions at issue are found at Article II, Sections 9 and 10 of the Montana Constitution:

> **Section 9. Right to know.** No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.

> **Section 10. Right of privacy.** The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a

compelling state interest.

This Court has applied a two-step process in deciding claims in which these rights conflict. The process requires, first, determination of whether the person claiming the right of privacy has a subjective expectation of privacy and, if so, whether society is willing to recognize that expectation as reasonable. If both of those prerequisites are met, then the court must decide whether the privacy interest clearly exceeds the merits of public disclosure. *Missoulian v. Board of Regents* (1984), 207 Mont. 513, 675 P.2d 962. We therefore proceed to weigh the Pengras' rights to privacy, insofar as they are recognized by society, against the public's right to know the terms of the settlement agreement.

¶16 We are unable to identify any factual record from which the District Court could have found a privacy interest that would be harmed by disclosure of the settlement amount. While counsel apparently hand-delivered copies of the affidavit of psychologist Michael A. Emerson, Ph.D., to opposing counsel at the hearing before the District Court, that affidavit was not filed with the court until weeks after the court reached its decision. Because Emerson did not testify personally, no opportunity for cross-examination was available as to the statements made in the affidavit. And although counsel alleges that the affidavit was discussed at the hearing, no transcript of the hearing has been filed with this Court, and the District Court's written decision does not refer to the affidavit. Any assertion that the affidavit was part of the record is thus wholly unsupported.

¶17 Even if the affidavit were part of the record, the statements therein address only generally the adverse effects of publicity on the child. The statements apply to adverse effects from any and all public discussion of Tamara Pengra's death, including such discussions at the time of the crime and when Pengra filed this action. The affidavit does not relate specifically to adverse effects from disclosure of the settlement terms.

¶18 The claim that the Pengras have a subjective expectation of privacy in the settlement amount is, moreover, discredited by the surrounding circumstances of this case. Pengra took no steps to keep private his lawsuit against the State, and in fact requested a jury trial in the District Court. Pengra's counsel admitted at oral argument before this Court that if the settlement amount had not been sufficient, his client would have gone forward with the public jury trial of this case. The District Court opined that any harm to the Pengras by publicity had already occurred and that there was no basis for a conclusion that disclosure of the amount of the settlement would cause greater harm to the Pengras than had already been caused by the previous disclosures of the facts of the crime. We agree.

¶19 As to whether society is willing to recognize the Pengras' privacy expectation as to the amount of their tort settlement with the State, the enactment of the disclosure requirement in § 2-9-303, MCA, indicates that it is not. The reasons on the other side of the balance-the merits of public disclosure-explain that unwillingness.

¶20 Compelling policy reasons support disclosure of settlement amounts in tort actions with the State. Disclosure of such agreements provides an irreplaceable opportunity for taxpayers to assess the seriousness of unlawful and negligent activities of their public institutions. The taxpayers are entitled to know how much they must pay for such actions or inactions. And without muzzling the entire legislative process and all those involved in obtaining the appropriation to pay the claim, it appears that whatever privacy right the settling party has will be compromised, anyway, when the legislature appropriates the funds to pay the settlement.

¶21 Finally, we address the argument that it is not fair that just because a person files suit against the State, that person "loses his right of privacy." While this argument has some initial appeal, it falters upon closer examination. First, Pengra has cited no authority establishing a "right" to secrecy of a settlement amount. The unfortunate reality is that persons must take their tortfeasors as they find them- with resources to enter into settlements or not, and with restrictions as to disclosure of expenditures of those resources or not. Second, the § 2-9-303, MCA, disclosure requirements are aimed not at what the settling party receives, but instead at the what State government expends as a result of a given act or omission to act by agents of the government. The opposing party's "loss of the right of privacy" is only a secondary result of the disclosure provision.

¶22 On balance, we conclude that Pengra has not demonstrated that his and his daughter's rights to privacy clearly outweigh the public's right to know what costs the public has incurred in the settlement agreement with the Pengras. We affirm the District Court's decision denying Pengra's motion to seal the settlement agreement.

## Issue 2

¶23 Did the court err in denying Montana Law Week's claim for attorney fees?

¶24 Montana Law Week moved the District Court for an order awarding its reasonable attorney fees pursuant to § 2-3-221, MCA:

A plaintiff who prevails in an action brought in district court to enforce his rights under Article II, section 9, of the Montana constitution may be awarded his costs and reasonable attorneys' fees.

We have pointed out that under this statute, an award of attorney fees is discretionary. *Gaustad v. City of Columbus* (1995), 272 Mont. 486, 488, 901 P.2d 565, 567.

¶25 This Court has on two prior occasions reviewed claims that trial courts abused their discretion in resolving requests for attorney fees in "right-to-know" lawsuits. In one, *Bozeman Daily Chronicle v. City of Bozeman Police Dept.* (1993), 260 Mont. 218, 859 P.2d 435, the Court affirmed an award of fees. In the second case, *Gaustad*, we affirmed the denial of attorney fees. Neither case sets forth general standards for when attorney fees should be awarded under the statute.

¶26 In the present case, Montana Law Week has prevailed in its position, which argues in favor of granting the request for attorney fees. However, the State has never opposed Montana Law Week's position. The State has not asserted a right of privacy-that right has instead been asserted in this case by Pengra, a private party. Failure to object to the asserted right is the State's sole offense. As the State points out, it was faced with a dilemma when Pengra filed his motion to seal the settlement: If it had disclosed the settlement before the hearing and Pengra had later established a right to privacy, the State could have been liable for damages for violating that right. In addition, on and after the date on which the settlement was submitted for the District Court's approval, the court itself treated the agreement as temporarily sealed. Disclosure after that time would have exposed the State to a claim that it was in contempt of court.

¶27 We hold that the District Court did not abuse its discretion in declining Montana Law Week's request that the State be ordered to pay Montana Law Week's attorney fees. We therefore affirm the court's decision on that issue.

¶28 Having thus agreed with the District Court on both issues raised on appeal, we affirm that court's decision in its entirety. We remand this case with instructions that the District Court should dissolve its order staying disclosure of the settlement amount.

/S/ J. A. TURNAGE

We concur:

/S/ KARLA M. GRAY

Justice W. William Leaphart, dissenting.

¶29 I dissent as to Issue One and would not reach Issue Two.

¶30 The Court concludes that Pengra's facial challenge to § 2-9-303, MCA, was not properly raised below and is thus not ripe for appellate review. The Court reasons that Pengra did not raise this allegation before the District Court. In so concluding, the Court has elevated form over substance.

¶31 In the District Court proceeding, Pengra filed a motion invoking the right to privacy and sought to seal the settlement documents. In his brief in support of the motion he argued that: "The legislature cannot take away a person's personal privacy interest by statutory edict [referring to § 2-9-303, MCA]. The Constitution of Montana protects an individual's privacy and makes it paramount." In response, the media invoked the clear disclosure requirements of § 2-9-303(2), MCA, which states:

(2)  All terms, conditions, and details of the governmental portion of a compromise or settlement agreement entered into or approved . . . are public records available for public inspection.

¶32 Although Pengra did not recite the magic word "unconstitutional," he unequivocally asserted the constitutional right of privacy in the face of the above statute which abrogates any such right without even a pretense of balancing the competing interests. This Court ignores the obvious when it suggests that the District Court was not clearly presented with the issue of whether the statute is constitutional.

¶33 Furthermore, in his opening brief on appeal, Pengra argues:

By not going to jury trial and receiving a public verdict these people protected their privacy as many citizens do under similar circumstances. At the time they entered the settlement negotiations or at the time they filed suit for the minor child and the father they presumably knew not only about the statutory requirement of disclosure. They also reasonably knew constitutional and statutory rights, including their important right to pursuing [sic] *and that where a statute is unconstitutional on its face or as applied they can be protected.* [Emphasis added.]

¶34 It is beyond me how a court, confronted with one litigant asserting a constitutional privacy interest in a document, opposed by another litigant relying on a statute which purports to defeat that right of privacy can conclude that the constitutionality of the statute is somehow not at issue. Although the matter could have been more forcefully pleaded, the constitutionality of § 2-9-303, MCA, was clearly the crux of this dispute from the beginning.

¶35 Having turned a blind eye to the facial challenge to the statute, the Court then goes on to address the "as-applied" challenge to § 2-9-303, MCA. The Court cites our decision in Missoulian v. Board of Regents (1984), 207 Mont. 513, 675 P.2d 962, for the analysis to be employed when addressing conflicts between the Article II, Section 9, right to know, and the Article II, Section 10, right of privacy. In *Missoulian*, we enunciated a two-step process. First, it must be determined whether the person claiming the right of privacy has a subjective expectation of privacy and if so, whether society is willing to recognize that expectation as reasonable. *Missoulian*, 207 Mont. at 522, 675 P.2d at 967 (citation omitted). If both of these prerequisites are met, then the court must engage in a balancing test to determine whether the privacy interest exceeds the merits of the public disclosure. Having properly stated the test, the Court then "proceed[s] to weigh the Pengras' rights to privacy, insofar as they are recognized by society, against the public's right to know the terms of the settlement agreement."

¶36 The obvious flaw in the Court's "weighing" of the competing interests in the present case is that the statute in question forecloses any weighing process. Section -303 does not state that settlement agreements with the State are public documents *if* the interests of privacy outweigh public disclosure. Rather, it establishes an absolute rule: all terms and details of settlement with the State "are public records available for public inspection." The traditional balancing test has been preempted by a legislative enactment under which the right to know absolutely trumps the right of privacy.

¶37 Given the absolute statutory preference accorded the right to know, the Court's discussion as to the inadequacy of the factual record to support Pengra's claim to a subjective expectation of privacy is completely superfluous. If Pengra had produced fifteen witnesses with five days of testimony about his expectation of privacy it would make no difference. Under § -303 the settlement documents would be public documents irrespective of what the record demonstrates regarding Pengra's subjective expectation of privacy. The Court's faulting of Pengra for not timely filing the Emerson affidavit as part of the record and for not taking other steps to keep the lawsuit private is a complete red

herring. These so-called deficiencies have no relevancy to the analysis of § -303 and merit no further discussion.

¶38 The fact that § -303 preempts any "balancing" of competing interests proves the very point that the Court has conveniently side-stepped. That is, that the statute is not just unconstitutional as applied. It is unconstitutional on its face. It gives an absolute preference to one constitutional guarantee, the right to know, to the exclusion of another, the right of privacy. A legislative enactment which elevates the right to know to an absolute rule without any consideration of the individual's right of privacy cannot pass constitutional muster.

The *Missoulian* Analysis is Self-Defeating when applied to a Legislative Preference:

¶39 Even assuming arguendo that § -303 allowed for a balancing of interests, it makes no sense whatsoever to apply the two-part *Missoulian* construct to a legislative enactment which elevates one right over the other in an absolute manner. The media argues, and the Court agrees, that, in the face of the legislative enactment, the Pengras along with the rest of the public were on notice that settlements with the State are public. Thus, this Court holds there could be no subjective expectation of privacy. Why it is that the public's subjective expectation is defined by the legislative notice of § -303 to the exclusion of the superior constitutional notice of Article II, Section 10's right of privacy remains a mystery.

¶40 As to the second *Missoulian* inquiry: whether society is willing to recognize the Pengras' privacy right, the media argues that, in adopting § -303, the legislature has spoken and plainly foreclosed any argument that society would recognize a right of privacy in a settlement with the State. Unfortunately the Court buys into this argument without considering the implications of its decision. Under the Court's present logic, the legislature can, by passing a statute, defeat both any subjective expectation of privacy and any contention that society would recognize as reasonable an expectation of privacy. Having negated both these propositions in one fell blow, the legislature has obviated any need for a judicial weighing of the competing interests under the *Missoulian* analysis. Under this Court's reasoning, the mere fact of enactment completes the constitutional analysis so that once the legislature speaks, the courts no longer have any role in scrutinizing whether the enactment comports with the Constitution.

¶41 In short, the Court has handed the Article II, Section 10, right of privacy to the legislature on a silver platter and said do with it what you will, it's in your hands. If, in its

wisdom, the legislature next passes a statute which says that all medical and tax records of litigants in the State court system are public records available for public inspection, so be it. In the face of such a statute, an individual could not expect privacy nor would society recognize as reasonable such an expectation. In the final analysis, the courts are rendered helpless bystanders, powerless to require any deference to the individual right of privacy as envisioned by the framers of the Constitution.

¶42 I continue to value the public's right to know and recognize that there will be instances where that right will conflict with the right of privacy. I cannot, however, accept the Orwellian proposition that the legislature can, with no judicial balancing of the competing interests allowed, subordinate the rights of individuals to the rights of the public.

¶43 I would hold that § 2-9-303, MCA, is unconstitutional on its face in that it creates an absolute preference for the right to know without any consideration whatsoever for the Pengras' constitutional right of privacy. Tiffany Pengra's loss of her mother is a personal tragedy of the highest order. That she is deemed to have waived her right of privacy if she seeks recompense for that loss is a constitutional tragedy.

/S/ W. WILLIAM LEAPHART

Justice Terry N. Trieweiler and Justice William E. Hunt, Sr., join in the foregoing dissenting opinion.

/S/ TERRY N. TRIEWEILER

/S/ WILLIAM E. HUNT, SR.

Justice James C. Nelson specially concurs.

1. ¶I concur in our discussion and resolution of Issue 2. As to Issue 1, I concur in the result, and I also concur in the "balancing" approach which the Court takes in resolving this issue in this case.

2. ¶Having said that, I also agree with the observation of the dissent. The plain language of § 2-9-303(2), MCA, precludes the very sort of balancing that the trial court and this Court use to resolve Issue 1. The statutory language is mandatory. All settlements with the State are public documents. End of story. There is no ability under this statute, as presently written, for judicial balancing of the constitutional right of individual privacy guaranteed under Article II, Section 10, and the public's right to know guaranteed under Article II, Section 9,--keeping in mind that the one constitutional limitation of the public's right to know is a demonstrated overarching right of individual privacy in the documents or deliberations for which access or disclosure are sought.

3. ¶I part company with the dissenting Justices, however, in their conclusion that this case should be resolved on the basis of their constitutional argument. While the dissent makes the argument that Pengra should have made, the fact of the matter is that was not Pengra's argument to the trial court nor was that his argument on appeal.

4. ¶In fact, a review of the record and Pengra's briefs on appeal show that he argued for the balancing approach which this Court uses to resolve Issue 1--albeit that he argued for the opposite result than the one we reach. It is not until page 5 of his 8-page reply brief that Pengra raises the argument that § 2-9-303(2), MCA, may be unconstitutional. Even then, the two sentences he devotes to this raise an "as applied" challenge, rather than the "facial" challenge which, as the dissent correctly points out, is the true problem. Specifically, Pengra states that he is "not asking the Court to insert any provision into MONT. CODE ANN. § 2-9-303(2). Rather, they are requesting this Court to rule that the law is unconstitutional as applied to the facts and circumstances of this case."

5. ¶In summary, I concur in the balancing approach and disposition of Issue 1 because that was the way it was presented and argued to the trial court and to this Court by Pengra. As to whether § 2-9-303(2), MCA, is facially unconstitutional as presently written, that will have to be addressed in a future challenge, absent the Legislature amending the statute to allow the sort of balancing of Article II, Section 9, and Article II, Section 10 rights that, in my view, the Constitution clearly requires.

6. ¶On this basis I concur with the Court's opinion.

/S/ JAMES C. NELSON

Justice Jim Regnier concurs in the foregoing special concurrence.

/S/ JIM REGNIER