No. 00-810

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 228

ROY L. SHERRARD; KATHERYN N. SHERRARD,

Plaintiffs and Appellants,

v.

RON PREWETT; PREWETT EXCAVATING

& CONSTRUCTION, INC.,

Defendants and Respondents.

APPEAL FROM: District Court of the Twenty-First Judicial District,

In and for the County of Ravalli,

The Honorable Jeffrey H. Langton, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Brian Lilletvedt; Bosch, Kuhr, Dugdale, Martin & Kaze,

Havre, Montana

For Respondents:

Robert J. Phillips, Fred Simpson, Phillips & Bohyer, Missoula, Montana

Submitted on Briefs: March 22, 2001
Decided: November 20, 2001

Filed:

_____

Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Roy Sherrard (Sherrard) and his mother Katheryn Sherrard (collectively, the Sherrards) appeal from the judgment entered by the Twenty-First Judicial District Court, Ravalli County, on its Opinion and Order granting summary judgment to Ron Prewett and Prewett Excavating and Construction, Inc. (collectively, Prewett). We affirm.

¶2 The issue on appeal is whether the District Court erred in determining that no genuine issues of material fact exist and, on that basis, in granting summary judgment to Prewett.

BACKGROUND

¶3 The Sherrards purchased approximately 40 acres of property in Ravalli County, Montana, in November of 1995, on which they later built a home and intended to build a horse arena. In September of 1995, prior to the Sherrards' purchase of the property or construction of either building, Ravalli County Sanitarian Ron Curley (Curley) issued a re-site evaluation of the property which addressed groundwater levels and designated appropriate septic systems to service each building. His evaluation was based on two test holes gauging groundwater levels: one dug where the house was to be situated and another where the horse arena was to be built. In October of 1995, Curley approved a permit for a shallow cap system to be installed on the site of the proposed horse arena. The system was subject to Montana Department of Environmental Quality (DEQ) regulations which require minimum 12-inch trench depths and which also prohibit installation of a shallow cap septic system where the water table reaches within five feet of the natural ground surface.

¶4 In the spring of 1996, while preparing to build the horse arena, Sherrard hired Prewett to transport building materials to the property, and Prewett subsequently completed other jobs for Sherrard. During this time, Sherrard entered into an oral contract with Prewett to install a shallow cap septic system for the horse arena. Sherrard gave Prewett a copy of the

permit Curley had approved and indicated the area where Sherrard wanted the septic system installed.

¶5 Prewett began installing the system on June 18, 1996. He dug a hole and placed the septic tank in the ground, dug 36-inch deep trenches for lateral pipes in the drain field, placed washed gravel and then pipes in the trenches, and prepared the system for inspection. The next day, Prewett noticed water had filled the space left in the septic tank hole within three feet of the ground surface. At that time, he put backfill material in around the tank and covered up the water in the hole. Jake Kammerer (Kammerer), the new Ravalli County Sanitarian, inspected the system late that day. He observed and identified standing groundwater inside the septic tank and saw water squirt up around one of the pipes laid in the lateral trenches in the drain field when he stepped on it. After completing the inspection, Kammerer fixed the groundwater level on the site at 27 inches below the natural surface of the ground and ultimately determined the groundwater level was too high to meet state and county requirements for a shallow cap system. Kammerer informed Prewett he would not approve the system and revoked the Sherrards' permit.

¶6 The Sherrards subsequently sued Prewett seeking damages for negligent installation of the septic system, breach of contract, and breach of the implied covenant of good faith and fair dealing. Prewett moved for summary judgment and the Sherrards filed a cross-motion for partial summary judgment on the issue of liability. The District Court held a hearing at which testimony and oral arguments were received, and considered depositions and an affidavit. Thereafter, it granted summary judgment to Prewett and denied the Sherrards' cross-motion as moot. The District Court subsequently entered judgment dismissing the Sherrards' complaint with prejudice and awarding Prewett his costs. The Sherrards appeal.

STANDARD OF REVIEW

¶7 We review a district court's summary judgment ruling *de novo*, using the same Rule 56, M.R.Civ.P., criteria applied by the district court. *Clark v. Eagle Systems, Inc.* (1996), 279 Mont. 279, 282, 927 P.2d 995, 997 (citations omitted). Rule 56(c), M.R.Civ.P., provides, in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

¶8 The party moving for summary judgment has the initial burden of establishing the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. Once the moving party meets this burden, the burden shifts to the nonmoving party to establish otherwise by more than mere denial or speculation. *Johnson v. Barrett*, 1999 MT 594, ¶ 8, 295 Mont. 254, ¶ 8, 983 P.2d 925, ¶ 8 (citations omitted). Reasonable inferences drawn from the offered proof will be drawn in favor of the party opposing summary judgment. *See Schmidt v. Washington Contractors Group*, 1998 MT 194, ¶ 7, 290 Mont. 276, ¶ 7, 964 P.2d 34, ¶ 7 (citations omitted).

## DISCUSSION

¶9 Did the District Court err in determining that no genuine issues of material fact exist and, on that basis, in granting summary judgment to Prewett?

¶10 The District Court determined no genuine issue of material fact existed that the

groundwater depth at the horse arena site was less than five feet from the natural ground surface and, as a result, the shallow cap system could not meet DEQ regulations allowing such systems only when the groundwater level is more than five feet from the natural surface of the ground. Consequently, the District Court concluded the object of the contract between the Sherrards and Prewett was illegal and the Sherrards could not proceed with their contract-based claims. For the same reasons, the court concluded the Sherrards' claim that Prewett negligently constructed the system by digging the lateral trenches too deep, even if true, could not have caused them any damages.

¶11 We begin our *de novo* review by determining whether Prewett met the initial burden of establishing that no genuine issue exists as to any material fact. *See Johnson*, ¶ 8. In this regard, Prewett presented Kammerer's testimony that he would not have approved the septic system Prewett installed, regardless of whether the lateral trenches were dug to a correct depth, because the groundwater at the site was simply too high. Kammerer testified that the level of groundwater at the sight was 27 inches below the natural surface of the ground and there was no way a shallow cap system at that site could comply with DEQ regulations. In light of Kammerer's testimony, we conclude Prewett has met the initial burden of establishing that no genuine issue of material fact exists.

¶12 The burden thus shifts to the Sherrards to establish, by more than mere denial or speculation, that a genuine issue of material fact exists. *See Johnson*, ¶ 8. They argue the

existence of a genuine issue of material fact regarding the groundwater level at the horse arena site where Prewett installed the shallow cap septic system.

¶13 The Sherrards rely on Curley's re-site evaluation, which they argue documents the ground water level at seven feet below the surface of the ground. However, Curley's evaluation discussed two different test holes, one located at the home site, and the other located at the horse arena site. While the record supports the Sherrards' contention that Curley documented a groundwater level of seven feet, that was the groundwater level at the home site. Curley made no express determination of the groundwater level at the horse arena site. Consequently, Curley's evaluation is of no value to the Sherrards in establishing the existence of a genuine issue of material fact regarding the groundwater level at the horse arena site.

¶14 The Sherrards also rely on Prewett's deposition testimony. Prewett testified that, in his various excavations around the approximately 40-acre property, he hit water at eight feet while digging a pond and at between six and seven feet while digging the hole for the septic tank. The record indicates the pond is situated at the north end of the property, some distance from where the septic system was installed. With regard to the groundwater level at the septic tank hole location, Prewett testified that, after he encountered water at the six to seven foot level while digging, the hole filled overnight and the water table had equalized at about three feet below the surface of the ground by the next morning. Finally, the Sherrards contend Prewett testified he did not encounter groundwater while digging the 36-inch deep trenches for the drain field. In fact, however, Prewett testified he and his crew were "right at" the groundwater level while digging the trenches. Prewett's testimony, taken in its entirety, fails to establish a genuine issue of material fact with regard to whether the groundwater level was sufficiently deep to avoid the DEQ prohibition against shallow cap systems where the water table is within five feet of the natural ground surface.

¶15 The Sherrards repeatedly deny the groundwater level is only 27 inches below the surface of the horse arena site, and speculate it must be deeper than 48 inches or the original permit would never have been issued. However, "'mere denial, speculation, or conclusory statements' are insufficient to raise a genuine issue of material fact." *Schumacker v. Meridian Oil Co.*, 1998 MT 79, ¶ 15, 288 Mont. 217, ¶ 15, 956 P.2d 1370, ¶ 15 (quoting *Klock v. Town of Cascade* (1997), 284 Mont. 167, 174, 943 P.2d 1262, 1266). The Sherrards' bare denial of the 27-inch groundwater level to which Kammerer testified is insufficient to raise a genuine issue in that regard. Nor is their speculation about

the groundwater level at the time Curley issued the permit in 1995 sufficient to do so.

¶16 It also is important to note that, while the Sherrards have singled out Kammerer's determination that the groundwater level at the horse arena site is 27 inches below the surface of the ground as the genuine issue of material fact, "[m]aterial issues of fact are identified by looking to the substantive law which governs the claim" in summary judgment proceedings. *McGinnis v. Hand*, 1999 MT 9, ¶ 6, 293 Mont. 72, ¶ 6, 972 P.2d 1126, ¶ 6 (citation omitted). DEQ regulations governing the installation of shallow cap septic systems are the relevant substantive "law" in the present case. As such, the material fact here is not whether the groundwater level at the horse arena site is precisely 27 inches below the surface of the ground, but whether it is five feet or more below the surface of the ground as required by DEQ regulations for installation of a shallow cap system.

¶17 Ultimately, the Sherrards "must come forward with substantial and material evidence raising a genuine issue of material fact." *Montana Metal Buildings, Inc. v. Shapiro* (1997), 283 Mont. 471, 474, 942 P.2d 694, 696 (citations omitted). They have not done so. Accordingly, we conclude the Sherrards have not met their burden of establishing that a genuine issue of material fact exists with regard to the groundwater level at the horse arena site.

¶18 The Sherrards further contend that Kammerer would not have revoked the permit, and would have approved the shallow cap system, if Prewett had dug the trenches in the drain field 12 to 18 inches deep instead of 36 inches. Kammerer testified, however, that he would not have approved the system, even if the trenches were in compliance with the trench-depth regulations, because the groundwater was simply too high at the horse arena site. In light of that testimony, and in the absence of any evidence of record to the contrary, the Sherrards' contentions are mere conclusory statements insufficient to raise a genuine issue of material fact.

¶19 Finally, the Sherrards argue in their reply brief that, even if the groundwater level is only 27 inches below the surface of the ground, it was Prewett's negligent installation of the trenches too deep that alerted Kammerer to the high level of groundwater. In essence, the Sherrards argue Kammerer would never have noticed the high groundwater level during his inspection, and would have approved the system, if Prewett had dug the trenches only 12 to 18 inches deep.

¶20 Under Rule 23(c), M.R.Civ.P., an appellant's reply brief must be confined to new

matters raised in the respondent's brief. Therefore, an appellant may not raise new issues in a reply brief. *Pengra v. State of Montana*, 2000 MT 291, ¶ 13, 302 Mont. 276, ¶ 13, 14 P.3d 499, ¶ 13 (citation omitted). The Sherrards' belated argument is unrelated to any matter discussed in Prewett's brief and, accordingly, we decline to address it.

¶21 We hold the District Court did not err in determining that no genuine issues of material fact existed and, on that basis, in granting summary judgment to Prewett.

¶22 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART