DA 14-0046

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 214

CITIZENS FOR BALANCED USE; BIG GAME FOREVER, LLC;
MONTANA OUTFITTERS AND GUIDES ASSN.; MONTANA
SPORTSMEN FOR FISH AND WILDLIFE; AND REP.
ALAN REDFIELD,

          Plaintiffs and Appellees,

    v.

MONTANA FISH, WILDLIFE & PARKS COMMISSION,

          Defendant and Appellant.

APPEAL FROM:    District Court of the Sixth Judicial District,
                  In and For the County of Park, Cause No. DV 13-01
                  Honorable Jon A. Oldenburg, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Rebecca Jakes Dockter, Aimee L. Fausser; Special Assistant Attorneys
                General; Helena, Montana

        For Appellees:

                James E. Brown; The James Brown Law Office, PLLC; Helena, Montana

                        Submitted on Briefs:  June 25, 2014
                                 Decided:  August 12, 2014

Filed:

                _____
                              Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 The Montana Fish, Wildlife & Parks Commission (FWP) appeals from the order of the Sixth Judicial District Court, Park County, awarding attorney's fees and costs to Plaintiffs, Citizens for Balanced Use, et al., (collectively, Plaintiffs or CBU) on their claims against FWP for violating their rights to know and participate under Sections 8 and 9, Article II, of the Montana Constitution. We affirm and restate the issue as follows:

¶2 *Did the District Court err by awarding attorney's fees and costs to CBU for prevailing on its constitutional claims?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 FWP is the agency responsible for establishing hunting, trapping, and fishing regulations in Montana. On December 5, 2012, FWP issued a press release announcing that it would conduct a meeting via conference call on December 10, 2012, "to take final action on three land matters and to hear an update on the state's wolf hunting season." The press release further explained that "[t]he wolf hunting update will include information on the 2012 season's harvest so far and additional information on the upcoming trapping season, which opens Dec. 15. The wolf hunting and trapping seasons will close Feb. 28, 2013." The agenda materials for the meeting similarly noted that FWP would be discussing: "Wolf Harvest Update—Informational"; "Review of 2012 Wolf Harvest"; and "Action Needed—Informational."

¶4 During the meeting, Commission Chairman Bob Ream moved to close wolf hunting and trapping in Hunting District 313 and part of Wolf Management Unit 390,

2

which are located in Park County. These areas have been described as a "buffer zone" around certain parts of the Yellowstone National Park border. Several commissioners expressed concern that the public had not been properly notified of the proposed closure; however, the motion carried by a vote of four to one.

¶5 On January 2, 2013, CBU filed a Complaint for Declaratory and Injunctive Relief, alleging that FWP violated its constitutional right of participation "by failing to provide prior public notice and opportunity to participate in [FWP's] decision to close certain areas to wolf hunting at its Dec. 10, 2012 meeting" and "by failing to hold a public hearing in an accessible facility in an area or community directly affected by an agency action that is of significant interest to the public." CBU further alleged that FWP violated its constitutional right to know "by failing to make [FWP's] papers, data and maps related to the closure of the wolf season available to the public in advance of the Dec. 10 Commission meeting." CBU also requested that the court award reasonable attorney's fees and court costs. That same day, CBU filed an Application for Temporary Restraining Order (TRO) and Preliminary Injunction and Brief in Support, asking the court to set aside FWP's decision and reinstitute wolf hunting and trapping in the closed areas of Park County. The District Court, Hon. Wm. Nels Swandal presiding, ruled that Plaintiffs had established the likelihood of success on their claims that FWP acted in violation of Montana law and that delay would cause them immediate and irreparable injury. The court issued a TRO prohibiting FWP from enforcing its decision and requiring it to reopen wolf hunting and trapping in the closed areas.

3

¶6 On January 14, 2013, the court, Hon. Brenda R. Gilbert presiding, held a show cause hearing to determine whether to grant CBU's request for a preliminary injunction. The court heard the following testimony from Commissioner Dan Vermillion in regard to whether the public received notice of the potential closure:

> I think it's fair to say that it wasn't on the agenda, and there is no question that people, if they looked at that agenda, wouldn't know, unless they understood the Commission's duties and the Commission's obligations and authority under the law, could—if that wasn't part of the general public's understanding of the Commission's role, then the[y] wouldn't know that that was on the agenda.

Additionally, the court accepted affidavits and declarations from members of the public expressing frustration they had not been informed of the potential closure and had not been able to provide comment before a closure decision was made. On January 18, 2013, the court issued a preliminary injunction prohibiting FWP from further enforcing its decision and from making any additional changes to wildlife seasons without first complying with Montana law.

¶7 Following the issuance of the preliminary injunction, the Legislature enacted House Bill 73, effective February 13, 2013, which prohibited FWP from implementing wolf hunting and trapping closures in areas immediately adjacent to national parks prior to reaching an established harvest quota. *See* Laws of Montana, 2013, ch. 13, § 1, presently codified at § 87-1-304, MCA. Although Commissioner Vermillion had previously stated that FWP would likely hold another conference call to "allow people time to weigh in" on the closure issue in order to "short circuit" the litigation, FWP

ultimately declined to address the matter further and allowed the wolf season to expire on its own on February 28, 2013. Accordingly, on July 29, 2013, the court, Hon. Jon A. Oldenburg presiding, granted FWP's motion to dismiss CBU's claims as moot based on the fact that FWP had voluntarily allowed the wolf season to expire and the Legislature had acted to ban these types of closures in the future. The court declined to address the parties' Cross Motions for Summary Judgment. The court also awarded attorney's fees and court costs to CBU in the amount of $14,728.90 after determining that it had prevailed on its constitutional claims by obtaining the preliminary injunction. FWP appeals this award.

## STANDARD OF REVIEW

¶8 A district court's determination that legal authority exists to award attorney's fees is a conclusion of law that we review for correctness. *Mungas v. Great Falls Clinic, LLP*, 2009 MT 426, ¶ 42, 354 Mont. 50, 221 P.3d 1230 (citations omitted). If such authority exists, we review a district court's award of attorney's fees for an abuse of discretion. *Hughes v. Ahlgren*, 2011 MT 189, ¶ 10, 361 Mont. 319, 258 P.3d 439.

## DISCUSSION

¶9 *Did the District Court err by awarding attorney's fees and costs to CBU for prevailing on its constitutional claims?*

¶10 The rights to know and participate are set forth in the Declaration of Rights of the Montana Constitution. Article II, Section 8 of the Montana Constitution provides:

5

The public has the right to expect governmental agencies to afford such reasonable opportunity for citizen participation in the operation of the agencies prior to the final decision as may be provided by law.

Article II, Section 9 states:

No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.

Accordingly, agencies must provide interested persons reasonable opportunity to submit data, views, and arguments prior to making final decisions, *Schoof v. Nesbit*, 2014 MT 6, ¶ 21, ___ Mont. ___, 316 P.3d 831 (citing § 2-3-111(1), MCA), and develop procedures permitting and encouraging public participation in such decisions, *Schoof*, ¶ 21 (citing § 2-3-103(1)(a), MCA). Decisions made in violation of these constitutional and statutory provisions may be set aside or voided by a district court. Sections 2-3-114 and 2-3-213, MCA. Further, "[a] plaintiff who *prevails* in an action brought in district court to enforce the plaintiff's rights under Article II, section 9, of the Montana constitution may be awarded costs and reasonable attorney fees." Section 2-3-221, MCA (emphasis added). A district court's determination to award attorney's fees and costs under § 2-3-221, MCA, is discretionary. *Pengra v. State*, 2000 MT 291, ¶ 24, 302 Mont. 276, 14 P.3d 499 (citation omitted).

¶11 The District Court determined that CBU was entitled to attorney's fees and costs because CBU "prevailed—if not specifically, in substance," on its claims. The court reasoned that "[b]y obeying the Preliminary Injunction, by not challenging the Injunction,

6

and by allowing the wolf season to run its course, [FWP] provided [CBU] with the fundamental relief [it] sought."

¶12 FWP argues that CBU cannot "be described as having prevailed" because "success at the preliminary injunction stage of a case is not a determination of the merits of the complaint for attorneys' fees purposes," citing *Dreyer v. Bd. of Trs.*, 193 Mont. 95, 100-01, 630 P.2d 226, 229 (1981). FWP contends that a conclusion to the contrary would, quoting *Dreyer*, "violate[] the most fundamental right of due process—the right to appear and be heard on the merits of [an adversary's] complaint." *Dreyer*, 193 Mont. at 101, 630 P.2d at 229.

¶13 CBU responds that it was the prevailing party despite the fact that the District Court did not reach a final decision on the merits, citing *Havre Daily News, LLC v. City of Havre*, 2006 MT 215, ¶ 44, 333 Mont. 331, 142 P.3d 864—on which the District Court relied. CBU notes that in that case, we stated that the defendant's actions in mooting the lawsuit "provided the Newspaper with the very relief it sought to procure through litigation." *Havre Daily News*, ¶ 44. CBU argues that, similarly, FWP's decision to leave the preliminary injunction in place and let the wolf season expire on its own "provided CBU, in part, [with] the relief they sought to secure through filing this litigation." CBU reasons that, were it not for its efforts in obtaining a TRO and preliminary injunction, FWP "would have kept hunting closed in parts of Park County for the remainder of the 2012-2013 wolf hunting and trapping season." Therefore, CBU

argues that it "prevailed" on its constitutional claims and is entitled to attorney's fees and costs.

¶14     As a general rule, a party is "not entitled to a judgment for attorney fees without a final determination of the underlying controversy in [its] favor." *Dreyer*, 193 Mont. at 99, 630 P.2d at 228; *Avanta Fed. Credit Union v. Shupak*, 2009 MT 458, ¶ 49, 354 Mont. 372, 223 P.3d 863 (The "'prevailing party is the one who has an affirmative judgment rendered in his favor at the conclusion of the entire case.'") (citations omitted). In *Dreyer*, members of the Mid-Rivers Telephone Co-op sought an injunction against the Board of Trustees of the Co-op to prevent them from holding a special meeting and election. The district court granted a temporary restraining order, and, after a hearing, issued an injunction pendente lite prohibiting the Board from proceeding until a hearing on the merits of the litigation could be conducted. *Dreyer*, 193 Mont. at 96, 630 P.2d at 227. Nothing further occurred until the plaintiff members sought an award of attorney's fees, which the court granted. *Dreyer*, 193 Mont. at 96-97, 630 P.2d at 227. The court also determined that the underlying lawsuit had been mooted by the passage of time. *Dreyer*, 193 Mont. at 97, 630 P.2d at 227. This Court determined that the district court erred in awarding attorney's fees prior to reaching a final determination on the merits. We explained that the purpose of the court's injunction was "simply to preserve the status quo pending trial of the merits of plaintiffs' complaint," and, therefore, the plaintiffs had not yet prevailed. *Dreyer*, 193 Mont. at 99-100, 630 P.2d at 228-29. We further determined that the case was not moot and remanded it to the district court to "determine

8

the ultimate rights of the parties," prior to taking up the question of attorney's fees. *Dreyer*, 193 Mont. at 101, 630 P.2d at 229.

¶15    In *Havre Daily News*, plaintiff newspapers (collectively, the Newspaper) filed suit against the City of Havre and members of the Havre Police force (collectively, Havre) seeking to obtain several unredacted documents. *See Havre Daily News*, ¶¶ 1, 42. Eventually, Havre provided the Newspaper with the requested documents and moved for summary judgment. The District Court granted Havre's motion for summary judgment and awarded the Newspaper attorney's fees. *Havre Daily News*, ¶¶ 7-8. On appeal, we determined that although the Newspaper did not technically "prevail," summary judgment in favor of Havre had been entered only because Havre had mooted the case by providing the requested documents. We explained that "[a]bsent Havre's conduct, the case would not have become moot. In mooting the case, Havre provided the Newspaper with the very relief it sought to procure through litigation; thus, the Newspaper has prevailed in substance, albeit without court intervention." *Havre Daily News*, ¶ 44. Therefore, the Newspaper was a "prevailing party" entitled to attorney's fees under § 2-3-221, MCA. *Havre Daily News*, ¶¶ 43-44.

¶16    As CBU correctly argues, the truncated time frame between the challenged decision of December 10, 2012, and the end of the wolf hunting season on February 28, 2013, "rendered it impossible for Plaintiffs to obtain a judgment on the merits prior to the end of the season." Given the short timeframe involved, the TRO and preliminary injunction were the only forms of relief that Plaintiffs could hope to receive. Like the

9

plaintiffs in *Havre Daily News*, CBU successfully obtained "the very relief it sought to procure through litigation" for the pertinent time period. *Havre Daily News*, ¶ 44. The preliminary injunction barred FWP from implementing the early closure of the wolf hunting season, and produced the same result as a final judgment setting aside or voiding the decision under §§ 2-3-114 or 2-3-213, MCA.

¶17 The facts of this case are distinguishable from *Dreyer*. There, we concluded that the underlying controversy had not been mooted by the passage of time and should be remanded for a full trial on the merits. We explained that the "findings of facts, conclusions of law and judgment of the District Court awarding attorney fees was premature." *Dreyer*, 193 Mont. at 101, 630 P.2d at 229. In contrast, here, there is no underlying controversy to litigate on the merits. The wolf hunting season has already expired and § 87-1-304(7), MCA, prevents FWP from making these types of closures in the future. The District Court's order awarding attorney's fees and costs was not premature. CBU obtained the relief it sought to procure through litigation and must be considered a "prevailing party" under § 2-3-221, MCA.

¶18 FWP argues that even if CBU is a prevailing party, CBU cannot recover attorney's fees and costs for its Article II, Section 8 claims because § 2-3-221, MCA, "only allows specific recovery for Article II, section 9 claims—not for Article II, section 8 claims." CBU responds that its complaint alleged that FWP "violated its legal duties under Article II, Section 9 to protect the public's right to know of and to participate in final decisions of public importance." CBU asks us to review its complaint as a whole to

ascertain the purpose of its suit, which it states was "to hold FWP accountable for violations of both Montana's right to participate and right to know provisions."

¶19 Montana follows the "American Rule," that attorney's fees may not be awarded in a civil action absent a specific statutory or contractual provision. *Sunburst Sch. Dist. No. 2 v. Texaco, Inc.*, 2007 MT 183, ¶ 88, 338 Mont. 259, 165 P.3d 1079. Section 2-3-221, MCA, authorizes a district court to award attorney's fees and costs to a successful plaintiff seeking to enforce the right to know under Article II, Section 9. Sections 8 and 9 of Article II share a "fundamental link" and are "inextricabl[y] associat[ed]." *Bryan v. Yellowstone Cnty. Elem. Sch. Dist. No. 2*, 2002 MT 264, ¶¶ 30-31, 312 Mont. 257, 60 P.3d 381. We have declined to "analyze the two provisions in a vacuum, 'separate and distinct' from one another . . . ." *Bryan*, ¶ 31; *see Schoof*, ¶ 22 fn.3. Given the close relationship between the right to know and right of participation, we conclude that the District Court did not err by awarding attorney's fees and costs to CBU under both provisions. CBU's complaint alleges multiple violations of these rights based on FWP's conduct during the December 10, 2012 phone meeting. Each count proffered by CBU arose out of this singular event and pertained to interrelated actions by FWP. Therefore, we decline to parse CBU's constitutional claims for purposes of awarding attorney's fees and costs.

¶20 Lastly, FWP argues that the District Court's order on attorney's fees contains improper findings of fact that address the merits of CBU's claims and constitutes an advisory opinion in light of the conclusion that the case has been mooted. While we

11

recognize that the court's order briefly discusses the merits of CBU's case, the court's findings were not determinative as to its analysis and play no part in our decision today.

¶21 Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA

Justice Beth Baker, concurring.

¶22 I concur with the disposition of this appeal based on the Court's ruling that our holding in *Havre Daily News* authorizes the award of fees under the circumstances presented. In my view, however, *Dreyer* is of questionable validity on the issue of attorney's fees following issuance of a preliminary injunction.

¶23 There has been considerable development in the law on "prevailing party" status for purposes of awarding attorney's fees since *Dreyer* was decided. The United States Supreme Court held in 1992 that a party prevails "when actual relief on the merits of [the plaintiff's] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12, 113 S. Ct. 566, 573 (1992). In reliance on *Farrar*, we have held that, where a plaintiff has prevailed on her legal claims, she may be entitled to fees even

12

if she recovers only nominal damages. *Griffith v. Butte Sch. Dist. No. 1*, 2010 MT 246, ¶¶ 66-67, 358 Mont. 193, 244 P.3d 321.

¶24 A plaintiff obtains relief "on the merits" of the claim when there is a material alteration of the parties' legal relationship, accompanied by "judicial *imprimatur* on the change." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605, 121 S. Ct. 1835, 1840 (2001). The Ninth Circuit is among several federal circuits recognizing that a preliminary injunction will satisfy *Buckhannon*'s "judicial *imprimatur*" requirement "if it is based on a finding that the plaintiff has shown a likelihood of success on the merits." *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 716 (9th Cir. 2013).

¶25 A party is not considered to have prevailed if a preliminary injunction "is reversed, dissolved, or otherwise undone by the final decision in the same case." *Sole v. Wyner*, 551 U.S. 74, 83, 127 S. Ct. 2188, 2195 (2007). In the absence of a final judgment in the case, however, such as when a settlement is reached or the case is rendered moot, "there may be circumstances in which a preliminary injunction results in sufficiently enduring change to warrant an award of fees[.]" *Higher Taste*, 717 F.3d at 717.

¶26 Neither of the parties to this appeal has briefed these authorities or their application to this case, and the Court therefore properly refrains from analyzing them. Nonetheless, *Dreyer* should be revisited in an appropriate future case.

/S/ BETH BAKER