DA 20-0512

FILED

04/27/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0512

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 100

CHARLES J. HERINGER, III, as the Trustee of the
CHARLES J. HERINGER, III, Trust, dated May 20, 1999,
as Amended and Restated; RONALD R. BROADWAY;
SHAWN A. SCHAFFER and KRISTY M. SCHAFFER;
MICHAEL A. DiFRONZO; TRACIE E. PABST; MOOSE 59, LLC;
and MOOSE DROOL PROPERTIES, LLC,

        Plaintiffs and Appellants,

    v.

BARNEGAT DEVELOPMENT GROUP, LLC; RZLDZL, LLC;
and John and Jane Does 1-10;

        Defendants and Appellees.

APPEAL FROM:     District Court of the Eighteenth Judicial District,
                In and For the County of Gallatin, Cause No. DV-20-114B
                Honorable Rienne H. McElyea, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

            Robert K. Baldwin, Goetz, Baldwin & Geddes, P.C., Bozeman, Montana

        For Appellees:

            Alanah Griffith, Patrick Tillisch, Griffith & Cummings, PC, Big Sky,
            Montana (for Barnegat Development Group, LLC)

            Elizabeth W. Lund, Berg Lilly, PC, Bozeman, Montana
            (for RZLDZL, LLC)

                      Submitted on Briefs:  March 3, 2021

                                Decided:  April 27, 2021

Filed:

_____
                      Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 The owners of condominium units located in Big Sky, Montana, sued the condominium developer for breach of contract and declaratory judgment after the developer unilaterally amended the condominium declaration to create a new homeowners' association to which new unit owners would belong, leaving the existing unit owners in the original association. Before answering the complaint, the developer revoked the amendment to the declaration. The Eighteenth Judicial District Court, Gallatin County, dismissed the case as moot and declined to award attorney fees to either party, concluding neither party was a prevailing party under the circumstances. The condominium owners appeal, raising the following restated issues on appeal:

*1. Whether the District Court erred dismissing the case as moot; and*

*2. Whether the District Court erred in refusing to award attorney fees and costs.*

¶2 We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 Charles J. Heringer, III, as the Trustee of the Charles J. Heringer, III, Trust, dated May 20, 1999, as Amended and Restated; Shawn A. Schaffer and Kristy M. Schaffer; Michael A. DiFronzo; Tracie E. Pabst; Moose 59, LLC; and Moose Drool Properties, LLC (Owners) own existing condominium units in the Moose Ridge Condominium Development in Big Sky, Montana. Their seven units were built between 2007 and 2009. The Owners all purchased their individual units before September 2018.

¶4 The Amended and Restated Declaration for Moose Ridge Condominium (the "Declaration"), filed with the Gallatin County Clerk and Recorder in 2007, governs the

2

development of the Moose Ridge condominiums and provides for the Moose Ridge Condominium Owners' Association, Inc. (the "Association").[1]  The Declaration provides a procedure for seeking the Owners' consent to amend the Declaration.  It also allows the developer to unilaterally amend the Declaration "for the purposes of correcting survey or other errors and for any other purpose unless the amendment would materially alter or change the rights of a Unit Owner or mortgagee, in which event Unit Owner and mortgagee consent shall be required as provided above."  The Declaration further provides "[n]otwithstanding the procedure set forth above, the [developer] may amend this Declaration, or any other Governing Documents, prior to any sale or lease of a Unit or interest thereof."

¶5     Barnegat Development Group, LLC (Barnegat) acquired the development rights to Moose Ridge from the prior developer in September 2018 and began taking steps to develop the remaining units.  Barnegat called a meeting with the Owners shortly after acquiring the development rights to discuss issues facing the Association.  The meeting took place on December 5, 2018, with most of the Owners in attendance.  Barnegat told the Owners the Association was facing multiple financial issues.  Under the Declaration, the Association was responsible for maintaining the common elements of the condominiums as defined by the Declaration, which included, among other things, the structural components of the buildings such as the foundations, as well as the roofs of the

---

[1] The development was originally created with the filing of the Preliminary Declaration for Moose Ridge Condominium in 2006.  The amendments filed in 2007 are not contested and thus govern this controversy.

buildings, decks, patios, and asphalt. Since the construction of the existing units about ten years prior, little to no maintenance and repair had taken place on the Owners' units. The Association had not set aside reserve money for the repair and replacement of expensive items like roofs, decks, siding, and asphalt. In addition, one of the condominium buildings, housing two of the existing units, had unaddressed foundation issues. The statute of limitations for construction defects against the original builder/developer had run on the foundation issues and the Association was now responsible for the costs of the needed repairs to these units.

¶6     Barnegat explained to the Owners at the meeting these issues could prevent the future sale of any new units that Barnegat built. Any new owners would be added to the Association and share responsibility to pay for these existing liabilities. The cost to address these issues was unknown at that time. Given the state of the Association's finances and the unknown cost of the liabilities facing the Association, financing for purchasers of new units was in jeopardy, as banks may not approve a loan for the purchase of a condominium unit within the Association. Barnegat advised the Owners it intended to begin selling new units the following summer. If the Association had not resolved these issues by that time, Barnegat warned it would look into splitting the Association into two associations, one including all the existing units and the other including all the new units.

¶7     After the meeting, Barnegat took steps to determine the extent of the liabilities facing the Association. Barnegat ordered and paid for a reserve study, which identified the various maintenance and repairs needed, their costs, and the amount the Association needed to assess the Owners to bring the reserve accounts up to where they should be.

4

Barnegat also commissioned an engineering report on the foundation issues, which were determined to be caused by expansive clays, settlement, and poor drainage around the building. The report estimated the cost of the repair could be anywhere between $50,000 and $350,000. Barnegat received this report shortly before the closing date for the sale of the eighth unit in November 2019. Barnegat disclosed the report to the buyer of the eighth unit. The buyer, RZLDZL, LLC, demanded Barnegat split the Association and indemnify it from any future suit. On October 16, 2019, Barnegat filed the amendment (the "Amendment") at issue in this litigation with the Gallatin County Clerk and Recorder, creating two separate homeowners' associations. Barnegat closed the sale with RZLDZL.

¶8     In a January 8, 2020 letter from Barnegat's counsel to the Owners' counsel, Barnegat explained the association split was in response to two issues: the unresolved foundation issues with two units and the lack of reserves to pay for needed maintenance, repair, and replacement of common elements. Barnegat explained these issues could cause financing issues and prevent the sale of new units. Barnegat maintained it

> split the associations to give your clients more time to fix the issues. It was never the intention that this would be a permanent split . . . . [A]s soon as [the foundation issue] is fixed and the reserves are brought up to industry standards, my client will look at combining the associations again.

The owners filed suit against Barnegat[2] on January 24, 2020, alleging breach of contract and seeking a declaratory judgment "the Amendment is invalid, null and void."

---

[2] Owners also named RZLDZL as a defendant, as it was a member of the newly created association. On February 12, 2020, RZLDZL appeared and stipulated it would not defend this case but will be bound by the final judgment.

5

¶9 Before Barnegat filed its answer, the Owners and Barnegat stipulated to a stay in the proceedings on February 26, 2020. While the case was stayed, Barnegat sought estimates for the cost of repairing the foundation issues, which came in at $60,000. In an April 9, 2020 letter to the Owners' counsel, Barnegat's counsel explained its

> plan is to file an amendment revoking the Amendment which split the Association into two Associations. . . . Barnegat will take over the Board [of the Association] . . . . Then, Barnegat/Board plans to move forward with fixing [the foundation issues] and apportioning the cost between the 8 Units.
> Should Barnegat revoke the amendment, I believe your clients' lawsuit would be moot.

In closing, Barnegat's counsel informed the Owners "I will move forward with filing the Revocation of the Amendment, and then file the Motion to Dismiss."

¶10 The Owners filed a notice of withdrawal from the stipulation to stay the case on April 20, 2020. Barnegat filed a revocation of the Amendment with the Gallatin County Clerk and Recorder on April 21, 2020. Barnegat then filed both its answer and a motion for summary judgment with the District Court on April 30, 2020. In its three-page motion and brief, Barnegat argued the case was moot because it had revoked the Amendment, attaching a copy of the filed revocation as an exhibit.

¶11 The Owners filed an extensive brief in opposition and cross-motion for summary judgment, seeking a declaration from the court the Amendment was invalid because Barnegat did not have authority under the declarations to file the Amendment splitting the Association. In its response brief, Barnegat argued both counts of the complaint were moot, because it had revoked the Amendment and although it maintained that it had authority under the Declaration to file the amendment to create two homeowners'

6

associations, it had sworn not to unilaterally amend the Declaration again because it had resolved the underlying issues. Barnegat attached an affidavit from Russell Lucas, the managing member of Barnegat, in which he attested Barnegat had revoked the amendment, assumed control of the Association, and had begun moving forward with the needed repairs. He concluded, "I will not need to file another amendment splitting the Association into two associations as I have resolved the underlying issues which caused Barnegat to file the amendment in the first place and I prefer to have one association." Both parties sought their attorney fees and costs as the prevailing party.

¶12 On September 24, 2020, the District Court dismissed the case as moot under M. R. Civ. P. 12(b)(1). The District Court declined to award either party their attorney fees and costs, concluding neither party was the prevailing party.

## STANDARDS OF REVIEW

¶13 We review a district court's conclusions of law for correctness. *Havre Daily News, LLC v. City of Havre*, 2006 MT 215, ¶ 9, 333 Mont. 331, 142 P.3d 864. "Mootness, as an issue of justiciability, presents a question of law," which we review for correctness. *Montanans Against Assisted Suicide (MAAS) v. Bd. of Med. Exam'rs*, 2015 MT 112, ¶ 7, 379 Mont. 11, 347 P.3d 1244 [hereinafter *MAAS*]; *see also Gottlob v. DesRosier*, 2020 MT 210, ¶ 5, 401 Mont. 50, 470 P.3d 188.

¶14 Whether legal authority exists entitling a party to recover attorney fees is a question of law reviewed for correctness. *See Havre Daily News, LLC*, ¶ 11. If legal authority exists to award attorney fees, we review the district court's order granting or denying attorney fees under that authority for an abuse of discretion. *See Whipps, L.L.C. v. Kaufman, Vidal,*

*Hileman & Ramlow, P.C.*, 2007 MT 66, ¶ 6, 336 Mont. 386, 156 P.3d 11. Thus, we review a district court's determination of "prevailing" or "losing" parties for an abuse of discretion. *Whipps, L.L.C.*, ¶ 6.

## DISCUSSION

¶15    *1. Whether the District Court erred dismissing the case as moot.*

¶16    The District Court concluded the issues in the case were moot and dismissed the case under M. R. Civ. P. 12(b)(1).  The court explained the Owners sought a declaration from the court that the Amendment was invalid, but the issue of the validity of the Amendment was moot as Barnegat had revoked it.  The court declined to apply the voluntary cessation exception to the mootness doctrine.  Relying on language in *Havre Daily News, LLC*, the District Court explained the voluntary cessation doctrine generally will not apply when there has been only a single instance of a party ceasing an allegedly wrongful act as a result of the filing of a lawsuit.  The court concluded because there was only a single incident at issue, it was not reasonable to expect the same wrong to recur.

¶17    The Owners argue on appeal the District Court misinterpreted this Court's holding in *Havre Daily News, LLC*.  They maintain this Court's reasoning in *Havre Daily News, LLC*, to decline the application of the voluntary cessation exception when there was only a single incident was limited to the fact-intensive inquiry of whether a government entity has properly withheld criminal justice information.  Owners argue that situation is not analogous to the facts of this case.  Rather, they argue the voluntary cessation exception to mootness should apply in this case because unlike the fact-intensive constitutional analysis at issue in *Havre Daily News, LLC*, ¶ 38, there is not an "infinite assemblage of variables"

8

involved in analyzing the contract provision at issue here, which would render a decision of "limited meaningful guidance" as to dispute between "hypothetical future parties." The Owners further maintain Barnegat cannot meet its burden to establish its conduct cannot reasonably be expected to recur because Barnegat defends the correctness of its action and maintains the Declaration gave it the authority to split the association into two.

¶18 Article VII, Section 4, of the Montana Constitution limits the judicial power of the courts of Montana to justiciable controversies. *See, e.g.*, *Greater Missoula Area Fed'n of Early Childhood Educators and Related Pers. v. Child Start, Inc.*, 2009 MT 362, ¶ 22, 353 Mont. 201, 219 P.3d 881 "A justiciable controversy is one upon which a court's judgment will effectively operate, as distinguished from a dispute invoking a purely political, administrative, philosophical or academic conclusion." *Plan Helena, Inc. v. Helena Reg'l Airport Auth. Bd.*, 2010 MT 26, ¶ 8, 355 Mont. 142, 226 P.3d 567 (quoting *Clark v. Roosevelt County*, 2007 MT 44, ¶ 11, 336 Mont. 118, 154 P.3d 48). Thus "[a] court lacks jurisdiction to decide moot issues or to give advisory opinions insofar as an actual 'case or controversy' does not exist." *Plan Helena, Inc.*, ¶ 11.

¶19 "A matter is moot when, due to an event or happening, the issue has ceased to exist and no longer presents an actual controversy." *Havre Daily News, LLC*, ¶ 31 (quoting *Shamrock Motors, Inc. v. Ford Motor Co.*, 1999 MT 21, ¶ 19, 293 Mont. 188, 974 P.2d 1150). If the issue presented at the outset of the action has ceased to exist or if a court can no longer grant effective relief due to an intervening event or change in circumstances, the issue is moot. *Havre Daily News, LLC*, ¶ 31. "[A] justiciable controversy in which the parties have a personal stake must exist at the beginning of the litigation, and at every point

9

thereafter, unless an exception to the doctrine of mootness applies." *Havre Daily News,*
*LLC*, ¶ 31. If a court lacks jurisdiction, then it may take no action in the case other than to
dismiss it. *Plan Helena, Inc.*, ¶ 11.

¶20 When the challenged conduct is of indefinite duration but is voluntarily terminated
by the defendant prior to completion of appellate review, the "voluntary cessation"
exception to mootness may apply. *Havre Daily News, LLC*, ¶ 34. Under such
circumstances, "[a] case might become moot if subsequent events made it absolutely clear
that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends*
*of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189, 120 S. Ct. 693, 708
(2000) (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203,
89 S. Ct. 361, 364 (1968)). "Due to concern that a defendant may utilize voluntary
cessation to manipulate the litigation process," the "heavy burden" of demonstrating "the
challenged conduct cannot reasonably be expected to start again lies with the party
asserting mootness." *Havre Daily News, LLC*, ¶ 34 (quoting *Friends of the Earth, Inc.*,
528 U.S. at 189, 120 S. Ct. at 708). In *MAAS*, we elaborated that the voluntary cessation
exception applies

> in the limited circumstances where the defendant has voluntarily ceased the
> alleged wrong; where it is "reasonable to expect the 'same wrong' to recur,
> such that a ruling on the merits would be of . . . discernible future benefit to
> the litigants or the interests of judicial economy"; and where the
> reasonableness of such recurrence is supported by evidence, rather than
> speculation or allegation alone.

*MAAS*, ¶ 15 (quoting *Havre Daily News, LLC*, ¶¶ 38-40) (alteration in original).

¶21 We agree with the Owners the District Court misapplied our holding in *Havre Daily News, LLC*. Whether there has been only a single instance of a party ceasing an alleged wrongful act may not carry great weight or be dispositive in every case. Rather, the relevance of such an inquiry depends on the circumstances of the case. In *Havre Daily News, LLC*, the newspaper alleged a violation of the constitutional right to know because the city of Havre withheld unredacted documents the newspaper requested. Whether a violation of the constitutional right to know has occurred is a heavily fact-dependent inquiry, given the need to balance the right to know against an individual's constitutional right to privacy. In *Havre Daily News, LLC*, we explained the exact harm at issue could not recur, because copies of the requested unredacted documents had been turned over to the newspaper and the city could not withhold those same documents again. The newspaper did not "point to inevitable future violations of the right to know in anything other than conjectural, conclusory fashion" and there was "no concrete evidence suggesting that Havre will perpetrate a substantially similar wrong." *Havre Daily News, LLC*, ¶ 40. Additional violations were speculative because the newspaper could only point to the single occurrence of the city violating the right to know by withholding documents until being sued and a decision on the merits under the facts of this particular case would provide limited meaningful guidance for future disputes.

¶22 Our holding in *MAAS* further elaborates on the voluntary cessation exception and is instructive in this case. In *MAAS*, MAAS sued the Board of Medical Examiners to withdraw a position statement that purported to provide guidance to doctors on assisted suicide after this Court's decision in *Baxter v. State*, 2009 MT 449, 354 Mont. 234,

11

224 P.3d 1211. MAAS argued the position statement exceeded the board's authority. In response to the suit, the board rescinded all its prior position statements, including the one at issue in the suit and removed them from its website. We upheld the dismissal of the case as moot. We rejected the application of the voluntary cessation exception because there was no indication that the board would issue any position statements, much less one interpreting the *Baxter* case, in the future. "Faced with such a lack of 'concrete evidence suggesting that [the defendant] will perpetrate a substantially similar wrong'" we refused to apply the voluntary cessation exception to mootness. *MAAS*, ¶ 16 (quoting *Havre Daily News, LLC*, ¶ 40) (alteration in original).

¶23    Barnegat has consistently maintained it split the Association for two reasons: the Association's lack of financial reserves and the unresolved foundation issues with two units. The Owners do not allege Barnegat's provided reasons for splitting the homeowners' association are pretextual or post-hoc explanations for purposes of litigation. Between the filing of the Amendment and its revocation, Barnegat was able to address both these issues and the managing member of Barnegat swore under oath in an affidavit, there is no longer any need for two associations, and he will not need to split the associations again in the future.[3]    Barnegat, thus, provided strong evidence that subsequent events had made it absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.

---

[3] Counsel for Barnegat is even more direct, maintaining in briefing before this Court and the District Court that Barnegat will not unilaterally split the association again.  Having taken this position before both the District Court and this Court, Barnegat would be hard pressed to defend any unilateral split of the Association in the future. *See Gibbs v. Altenhofen*, 2014 MT 200, ¶ 17, 376 Mont. 61, 330 P.3d 458 ("Judicial estoppel precludes a party to an action or proceeding from taking a position inconsistent with the party's previous judicial declarations." (quoting *Vogel v. Intercontinental Truck Body, Inc.*, 2006 MT 131, ¶ 10, 332 Mont. 322, 137 P.3d 573));

¶24    The Owners argue Barnegat fails to meet its burden to establish its conduct cannot reasonably be expected to recur because Barnegat defends the correctness of its action and maintains the Declaration gave it the authority to split the association into two.[4]  The owners argue this suggests a probability, or at least a possibility, of recurrence.  We disagree.  There is no indication in the record before us Barnegat will repeat the offending behavior in the future and Barnegat is bound by the representation of its managing member, Russell Lucas, it will not repeat the offending behavior.  The issues leading to the filing of the Amendment were resolved and are unlikely to recur.  In response to this evidence, the Owners have failed to point to "concrete evidence suggesting that [Barnegat] will perpetrate a substantially similar wrong" in the future.  *Havre Daily News, LLC*, ¶ 40.  Such "concrete evidence" could include, but is not limited to, evidence that Barnegat had previously revoked an allegedly invalid amendment as a result of a lawsuit.  Although the

---

*Kauffman-Harmon v. Kauffman*, 2001 MT 238, ¶ 15, 307 Mont. 238, 36 P.3d 408 ("The fundamental purpose of judicial estoppel is to protect the integrity of the judicial system and thus estop a party from playing 'fast and loose' with the court system."); *see also Already, LLC v. Nike, Inc.*, 568 U.S. 85, 94, 133 S. Ct. 721, 728 (2013); *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 1814 (2001) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." (quoting *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S. Ct. 555, 558 (1895))).

[4] The Dissent maintains the issues between the parties are not moot because the Owners sought construction of the Declaration and a ruling that the Declaration could not be amended unilaterally by Barnegat upon each new sale of an individual unit.  The declaration the Owners sought from the court in their Complaint, however, was very narrowly written and was not amended.  Although the Owners stated in their complaint they "are entitled to have the court construe the documents and determine the validity of the Amendment and declare the respective rights of the parties," the declaration the Owners sought in the Complaint is simply "A declaration that the Amendment is invalid, null and void."

13

District Court misapplied our holding in *Havre Daily News, LLC*, we conclude the District Court did not err in declining to apply the voluntary cessation exception to mootness in this case. We will affirm a district court when it reaches a legally correct result, even if it reaches the right result for the wrong reason. *Dennis v. Brown*, 2005 MT 85, ¶ 6, 326 Mont. 422, 110 P.3d 17.

¶25     *2. Whether the District Court erred in refusing to award attorney fees and costs.*

¶26     The Owners seek attorney fees under both the terms of the Declaration and under § 27-8-313, MCA, of the Uniform Declaratory Judgments Act. The District Court declined to award attorney fees under either theory because it determined there was no prevailing party. On appeal, the Owners argue they are entitled to an attorney fee award even if the case was rendered moot. Relying on *Havre Daily News, LLC*, the Owners argue fees should be awarded to a party who is forced to file litigation to obtain the relief sought, even though the case becomes moot and thus yields no ruling on the merits. The Owners argue the District Court erred in concluding they did not prevail in the suit because they failed to concede the mootness issue and continued to pursue the merits before the District Court. The Owners argue from a policy standpoint they should be awarded attorney fees because "facing imminent defeat," *Havre Daily News, LLC*, ¶ 44, Barnegat mooted the case to dodge the fee-shifting provisions of the Declaration and § 27-8-313. MCA. The Owners and Barnegat both seek attorney fees on appeal.

¶27     A determination a case is moot does not preclude an award of attorney fees authorized under statute or contract. *Houden v. Todd*, 2014 MT 113, ¶ 30, 375 Mont. 1, 324 P.3d 1157. Rather, the question whether a party should be awarded attorney fees "turns

14

instead on a wholly independent consideration: whether the plaintiff is a 'prevailing party.'" *Houden*, ¶ 30 (quoting *Doe v. Marshall*, 622 F.2d 118, 120 (5th Cir. 1980)). "The term 'prevailing party' is 'a legal term of art.'" *MC, Inc. v. Cascade City-County Bd. of Health*, 2015 MT 52, ¶ 41, 378 Mont. 267, 343 P.3d 1208 (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603, 121 S. Ct. 1835, 1839 (2001)). "A determination of the prevailing party requires consideration of all the facts and circumstances of a case." *Gibson v. Paramount Homes, LLC*, 2011 MT 112, ¶ 19, 360 Mont. 421, 253 P.3d 903. The general rule is the "prevailing party is the one who has an affirmative judgment rendered in his favor at the conclusion of the entire case." *Avanta Fed. Credit Union v. Shupak*, 2009 MT 458, ¶ 49, 354 Mont. 372, 223 P.3d 863 (quoting *Schmidt v. Colonial Terrace Assocs.*, 215 Mont. 62, 68, 694 P.2d 1340, 1344 (1985)). Under limited circumstances, we have approved an award of attorney fees to a party who did not obtain an affirmative judgment on the merits but nonetheless obtained the "very relief it sought to procure through litigation." *Citizens for Balanced Use v. Mont. Fish, Wildlife & Parks Comm'n*, 2014 MT 214, ¶ 15, 376 Mont. 202, 331 P.3d 844 (quoting *Havre Daily News, LLC*, ¶ 44). A district court is in the best position to understand the circumstances of the case and the parties' positions, and we will not reverse its determination of "prevailing party" absent an abuse of discretion. *See Sullivan v. Cherewick*, 2017 MT 38, ¶ 41, 386 Mont. 350, 391 P.3d 62.

¶28     In *Havre Daily News, LLC*, this Court upheld the district court's limited award of attorney fees "incurred in securing the unredacted" documents but denying any attorney fees incurred after the release of those documents, as the additional prospective relief the

15

newspaper sought was not justiciable. *Havre Daily, News, LLC*, ¶¶ 44, 48. On the issue of obtaining the unredacted documents, we held the newspaper "did not technically 'prevail' in its action" but "prevailed in substance," because it had obtained "the very relief it sought to procure through litigation," that is, the release of the unredacted documents. *Havre Daily News, LLC*, ¶ 44. We warned a party cannot provide the relief sought to moot a case "after extensive litigation, at the eleventh hour, and facing imminent defeat" in an attempt to "dodge [a] fee-shifting statute." *Havre Daily News, LLC*, ¶ 44.

¶29 In their complaint, the Owners alleged a breach of contract and sought specific performance of the Declaration and a decree the Amendment was invalid, null, and void as a violation of the Declaration. The Declaration allows for attorney fees for the prevailing party of the contract claim and § 27-8-313, MCA, grants the District Court discretion to award attorney fees in declaratory judgment suits "whenever necessary or proper." This case became moot when the challenged Amendment was revoked and was no longer in effect. After Barnegat revoked the Amendment, the District Court could no longer provide the Owners with the relief they sought in their complaint. Nonetheless, the Owners argued the case was not moot and continued to seek a decree from the court that the revoked Amendment was invalid, null, and void under the Declaration. As the District Court correctly determined the issue was moot and any decree would have amounted to an advisory opinion. The Owners could not obtain the very relief it sought of obtaining a decree from the District Court or specific performance of the Declaration.

¶30 The revocation did invalidate the Amendment, however, which was the ultimate outcome the Owners sought under both their breach of contract and declaratory judgment

16

claims. Based on this record though, it is not clear the Owners were forced to file this suit to obtain the revocation of the Amendment because it is not clear Barnegat revoked the Amendment in response to this suit. Barnegat had been taking steps to resolve the Association's financial issues since 2018. Barnegat filed the Amendment in October 2019 to prevent the sale of a new unit from falling through. Before litigation began in this case, Barnegat informed the Owners it preferred for the amendment to be temporary and would work to consolidate the associations when the financial issues were resolved. In the time between the filing of the Owners' suit and the revocation of the Amendment, Barnegat learned the foundation issue was not as expensive to repair as feared. It then revoked the Amendment, took over the Association, and began taking steps to resolve the underlying financial issues facing the Association. Barnegat revoked the Amendment before filing an answer to the complaint. The Owners point to no evidence Barnegat's stated reasons for revoking the Amendment were mere pretext to avoid a decision on the merits or an attempt to dodge the fee-shifting provisions of the Declaration and § 27-8-313, MCA, when "facing imminent defeat." Under these circumstances, the District Court concluded neither party was the prevailing party. The District Court was in the best position to make this determination and we find no abuse of its discretion in its determination the Owners were not prevailing parties.

¶31     As we do not disturb the District Court's determination that neither party was the prevailing party, we also decline to award attorney fees to either party on appeal. *See R.C. Hobbs Enters., LLC v. J.G.L. Distrib., Inc.*, 2004 MT 396, ¶¶ 51-52, 325 Mont. 277, 104 P.3d 503.

CONCLUSION

¶32    The District Court is affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR

Justice Beth Baker, dissenting.

¶33    Tracking Barnegat's argument, the Court focuses narrowly on the Amendment to split the Association in two to conclude that revocation of that Amendment moots this controversy. The Court emphasizes Barnegat's representations in the District Court and on appeal that it "will not unilaterally split the association again." Opinion, ¶ 23 n.3. The Court thus concludes that the voluntary cessation exception to mootness does not apply because there is no "concrete evidence suggesting that [Barnegat] will perpetrate a substantially similar wrong" in the future. Opinion, ¶ 24.

¶34    What the Court overlooks is the Owners' claim for declaratory judgment, seeking a declaration of their rights under the Declaration for the Moose Ridge Condominiums regarding Barnegat's ability to make a unilateral amendment. Their complaint sought to have the District Court "construe the documents and determine the validity of the Amendment and declare the respective rights of the parties." The Uniform Declaratory Judgments Act, §§ 27-8-101 through -313, MCA, allows a court to afford a party

"relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." *Needham v. Kluver*, 2019 MT 182, ¶ 16, 396 Mont. 500, 446 P.3d 504 (quoting *Murray v. Motl*, 2015 MT 216, ¶ 11, 380 Mont. 162, 354 P.3d 197; § 27-8-102, MCA) (internal quotation marks omitted). "Any party to a written contract, or whose rights, status, or other legal relations are affected by a contract, may have its construction and validity determined and obtain a declaration of rights, status, or other legal relations from a district court." *Needham*, ¶ 16 (citing §§ 27-8-201, -202; *Murray*, ¶ 11). "A contract may be construed either before or after there has been a breach thereof." Section 27-8-203, MCA.

¶35 Although the amendment they sought to invalidate was the amendment splitting the Association in two, the Owners sought construction of the declaration of covenants and a ruling that they could not be amended by Barnegat unilaterally upon each new sale of an individual unit. As the party asserting mootness, Barnegat bears a "heavy burden" to demonstrate that its "challenged conduct cannot reasonably be expected to start up again[.]" *Havre Daily News, LLC*, ¶ 34. Both before the District Court and on appeal, Barnegat has chosen its words carefully in attempt to defeat the voluntary cessation exception to mootness. Barnegat points out its clear statement that it "will not" amend the Declaration to split the Association into two separate associations; the Court relies on this promise to find the action moot. Opinion, ¶¶ 23-24. Barnegat asserts without qualification, however, that the Declaration allows it "to make any type of amendment prior to the sale of any Unit." Barnegat plainly anticipates future Unit sales. As the litigation demonstrates, it made the unilateral amendment at issue in hasty fashion when a prospective buyer balked

19

at closing the sale; a similar circumstance—even if it is some other provision of the covenants to which a new purchaser objects—certainly may arise with the next sale, or the sale after that, with little time for adjudication of the disputed language prior to closing. The threatened repeated conduct is not the splitting of the Association but Barnegat's unilateral amendment of the Declaration. Invoking the voluntary cessation exception is appropriate under these circumstances, when the defendant expressly defends its ability to engage in repeated conduct of the sort challenged in the action.

¶36 I would conclude that Barnegat has failed to meet its burden to establish mootness. Because the District Court dismissed the action without reaching the merits, I would remand for consideration of the parties' arguments on the construction of the Declarations' provisions for amendment and for reconsideration of the Owners' claim for attorneys' fees.

/S/ BETH BAKER