FILED

09/07/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0514

DA 20-0514

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 221

PAUL WILKIE,

       Plaintiff and Appellant,

   v.

HARTFORD UNDERWRITERS INSURANCE COMPANY,
a/k/a THE HARTFORD; RICHARD L. SPROUT; and
SHAUNA SPROUT,

       Defendants and Appellees.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                In and For the County of Gallatin, Cause No. DV-20-367B
                Honorable Rienne H. McElyea, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Robert K. Baldwin, Jeffrey J. Tierney, Goetz, Baldwin & Geddes, P.C.,
           Bozeman, Montana

       For Appellees Richard and Shauna Sprout:

           Patrick M. Sullivan, Poore, Roth & Robinson, P.C., Butte, Montana

       For Appellee Hartford Underwriters Insurance Company:

           Ian McIntosh, Dale Schowengerdt, Kristen Meredith, Crowley Fleck PLLP,
           Bozeman, Montana

       For Amicus Montana Trial Lawyers Association:

           Patrick T. Fox, Hunt & Fox PLLP, Helena, Montana

           Veronica A. Procter, Procter Law PLLP, Billings, Montana

Submitted on Briefs:  June 30, 2021

Decided:  September 7, 2021

Filed:

_____
                    Clerk

2

Justice Beth Baker delivered the Opinion of the Court.

¶1    Paul Wilkie appeals an Eighteenth Judicial District Court order dismissing as moot his claim for declaratory judgment that The Hartford Underwriters Insurance Company, a/k/a The Hartford, has a duty as an insurer to provide its insured's policy to a third-party claimant when the insured's liability is reasonably clear. The District Court dismissed the case as moot after Richard and Shauna Sprout, the insureds, provided the policy to Wilkie. Wilkie contends that the District Court erred because The Hartford failed to meet its burden of demonstrating the inapplicability of the voluntary cessation exception to mootness. We reverse the order dismissing the claims against The Hartford and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    Wilkie was injured when Richard Sprout hit him with his truck while Wilkie was walking across the street. At the time of the accident, Sprout was insured by The Hartford under an automobile insurance policy ("the Policy"). Wilkie submitted a claim to The Hartford and, after concluding that Sprout's liability was reasonably clear, The Hartford began making *Ridley*[1] medical payments to Wilkie. In February 2020, Wilkie's counsel requested from The Hartford a copy of the Policy or to "at least tell me the limit of liability insurance that applies to this claim." An employee of The Hartford responded the next day, stating:

---

[1] *Ridley v. Guaranty Nat'l Ins. Co.*, 286 Mont. 325, 951 P.2d 987 (1997) (interpreting the Unfair Trade Practices Act §§ 33-18-201(6) and -201(13), MCA, to require an insurer to pay injured third-party claimants even before a final settlement when liability is reasonably clear).

3

> Mr. Wilkie is not our insured and currently has a pending Bodily Injury claim with us. I do not believe we have any obligation at this time to provide you with a copy of our insured's policy, declaration page, or release his policy information to you, however, if you believe otherwise, please provide our office with such information for review.

Wilkie's counsel did not respond to this request for additional information. Wilkie's counsel never demanded that the Sprouts provide a copy of the Policy.

¶3 Wilkie instead filed his complaint with the District Court on March 30, 2020, seeking a declaration that The Hartford, as an insurer, had a duty to provide the Policy to Wilkie prior to litigation because liability was reasonably clear; or alternatively that The Hartford had a duty to disclose to Wilkie the amount of insurance coverage available for his claim. His complaint "included the Sprouts as defendants in this matter because they may claim an interest in the relief that [Wilkie] requests." Wilkie alleged that, besides his medical expenses, he was entitled to general damages but "ha[d] not yet made a demand . . . for payment of such general damages for various reasons, including, but not limited to, that he is not aware of the provisions of . . . Sprout's policy or of the amount of coverage available to pay damages to [him]." The complaint additionally alleged that "it is a common and normal practice of The Hartford to refuse to disclose the policy, declaration page, or policy amounts to injured third-party claimants like [Wilkie,]" which "ha[s] the effect of putting it in a more advantageous position[]" because it would "impose upon [Wilkie] the burden to negotiate from a position of ignorance, while The Hartford would negotiate with full knowledge of any issues about coverage and the amount of liability coverage available."

4

¶4     About three weeks after Wilkie filed his complaint, the Sprouts' counsel provided Wilkie with a copy of the Policy and its declarations page. The Hartford then filed a motion to dismiss under M. R. Civ. P. 12(b)(1) and 12(b)(6), which the Sprouts joined. Under its Rule 12(b)(1) claim for lack of subject matter jurisdiction, The Hartford argued that, because Wilkie was provided a copy of the Policy, the issues raised in his complaint were moot. It contended that Wilkie lacked any continued personal interest in the action and the District Court could not grant him any further relief. Wilkie objected, arguing that his request for declaratory relief should proceed under one of the exceptions to the mootness doctrine: voluntary cessation or wrongs capable of repetition yet evading review. The Hartford responded that the voluntary cessation exception did not apply when Wilkie alleged only a single instance of the challenged conduct, and that the evading review exception did not apply when Wilkie did not show that the challenged conduct was of limited duration or reasonably would be expected to occur again.

¶5     The District Court agreed that the claims had been rendered moot when the Sprouts provided Wilkie with the Policy and concluded that any additional ruling in the case would amount to an improper advisory opinion. The court granted The Hartford's and the Sprouts' motion and dismissed the case in September 2020.[2]

## STANDARD OF REVIEW

¶6     We review rulings under M. R. Civ. P. 12(b)(1) de novo for correctness. *Stowe v. Big Sky Vacation Rentals, Inc.*, 2019 MT 288, ¶ 12, 398 Mont. 91, 454 P.3d 655

---

[2] Wilkie does not clearly articulate an argument regarding the court's dismissal of the Sprouts from the action, and we thus decline to disturb the order dismissing his claims against them.

5

(citation omitted). "Mootness, as an issue of justiciability, presents a question of law, which we review for correctness." *Heringer v. Barnegat Dev. Grp., LLC*, 2021 MT 100, ¶ 13, 404 Mont. 89, 485 P.3d 731 (citations, internal quotation marks omitted); *Reichert v. State*, 2012 MT 111, ¶ 20, 365 Mont. 92, 278 P.3d 455 (citation omitted).

## DISCUSSION

¶7 "The judicial power of the courts of Montana is limited to justiciable controversies." *Greater Missoula Area Fed'n of Early Childhood Educators v. Child Start Inc.*, 2009 MT 362, ¶ 22, 353 Mont. 201, 219 P.3d 881 (citations omitted). "A justiciable controversy is one upon which a court's judgment will effectively operate, as distinguished from a dispute invoking a purely political, administrative, philosophical, or academic conclusion." *Progressive Direct Ins. Co. v. Stuivenga*, 2012 MT 75, ¶ 16, 364 Mont. 390, 276 P.3d 867 (citation omitted). A "case or controversy" must exist throughout the matter for a court to retain jurisdiction. *Child Start Inc.*, ¶ 23 (citations omitted) ("because the constitutional requirement of a 'case or controversy' contemplates real controversies and not abstract differences of opinion or moot questions, . . . courts lack jurisdiction to decide moot issues insofar as an actual 'case or controversy' no longer exists").

¶8 "Mootness is a threshold issue that must be resolved before we can address the underlying dispute." *Walker v. State*, 2003 MT 134, ¶ 40, 316 Mont. 103, 68 P.3d 872. An otherwise justiciable case may become moot if the disputed issue "has ceased to exist or is no longer live." *Child Start Inc.*, ¶ 23 (noting that such a circumstance would prevent a court from "grant[ing] effective relief or . . . restor[ing] the parties to their original position"); *Havre Daily News, LLC v. City of Havre*, 2006 MT 215, ¶ 31, 333 Mont. 331,

6

142 P.3d 864. Any further ruling in such a case would constitute an impermissible advisory opinion, "i.e., one advising what the law would be upon a hypothetical state of facts or upon an abstract proposition, not one resolving an actual 'case or controversy.'" *Plan Helena, Inc. v. Helena Reg'l Airport Auth. Bd.*, 2010 MT 26, ¶ 12, 355 Mont. 142, 226 P.3d 567 (citation omitted). "The fundamental question to be answered in any review of possible mootness is whether it is possible to grant some form of effective relief to the appellant." *Montanans Against Assisted Suicide (MASS) v. Bd. of Med. Exam'rs*, 2015 MT 112, ¶ 11, 379 Mont. 11, 347 P.3d 1244 (quoting *Briese v. Mont. Pub. Emps. Ret. Bd.*, 2012 MT 192, ¶ 14, 366 Mont. 148, 285 P.3d 550) (internal quotation marks omitted).

¶9 Even when a case is no longer "live," however, a court may hear and decide the case in specific circumstances. One such circumstance is the "voluntary cessation" exception, which allows a case to proceed that "would otherwise have been rendered moot by a defendant's voluntary cessation of the challenged action." *Montanans Against Assisted Suicide*, ¶ 15 (citing *Havre Daily News*, ¶¶ 38–40). This exception addresses the concern "that a defendant will attempt to moot only a plaintiff's meritorious claims, thereby avoiding an undesirable judgment on the merits. . . . This concern is particularly acute in situations when one would expect the same defendant to encounter substantially identical future controversies." *Havre Daily News*, ¶ 34 n.7 (internal citations omitted); *Montanans Against Assisted Suicide*, ¶ 15.

¶10 A defendant's voluntary cessation of conduct cannot moot a case unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to

recur." *Havre Daily News*, ¶ 38 (quoting *Friends of the Earth, Inc. v. Laidlaw Env'l Servs. (TOC), Inc.*, 528 U.S. 167, 189, 120 S. Ct. 693, 708 (2000)). "'Due to concern that a defendant may utilize voluntary cessation to manipulate the litigation process,' the 'heavy burden' of demonstrating 'the challenged conduct cannot reasonably be expected to start again lies with the party asserting mootness.'" *Heringer*, ¶ 20 (quoting *Havre Daily News*, ¶ 34).

¶11 The District Court concluded that the dispute was rendered moot when the Sprouts produced the Policy to Wilkie. It held that neither exception to the mootness doctrine applied, stating only that it had relied on "the argument and authority cited by [The Hartford and the Sprouts.]" The court expressed concern that "[i]ssuing a ruling with regard to the specific facts presented in this case would amount to an advisory opinion." It added, "[I]f [Wilkie] believes The Hartford's conduct rises to the level of bad faith, [Wilkie] may pursue that action. This Court will not provide an advisory opinion as a steppingstone [sic] to that litigation."[3]

¶12 Wilkie argues that the voluntary cessation exception defeats The Hartford's mootness claim. He contends that The Hartford has not met its "heavy burden" to avoid application of the exception because its conduct would allow insurers to "avoid adjudication of this important issue indefinitely by 'playing chicken' with injured

---

[3] The court's stated rationale overlooked the fact that Wilkie sought declaratory relief, which he is allowed "whether or not further relief is or could be claimed." Section 27-8-201, MCA; *see also Ridley*, 286 Mont. at 330–31, 951 P.2d at 990. The question before the District Court on The Hartford's motion was whether its conduct for which declaratory relief was sought would or would not recur; Wilkie's alternate options for seeking relief are irrelevant.

Montanans—refusing to provide basic policy information, forcing them to file suit, then yanking the rug out by providing the policy."

¶13 Citing *Havre Daily News*, The Hartford responds that "[t]he voluntary cessation exception does not apply where the plaintiff, like Wilkie, points to only a single instance of the challenged conduct. Wilkie has not alleged that [The] Hartford ever withheld any other information from him." It contends that the burden belongs to the party challenging mootness, arguing that "a plaintiff cannot avoid dismissal on mootness grounds by asserting a 'conjectural and conclusory' possibility of the recurrence of a challenged practice." The Hartford argues that "the plaintiff must show that the [opposing] party 'has repeatedly withheld documents . . . and then fully disclosed those same documents upon the plaintiff's filing suit.'"

¶14 The first problem with The Hartford's argument is that it misapprehends the burden. We discussed the defendant's burden in *Heringer*, where condominium owners sued the developer to invalidate an amendment to the condominium declaration. *Heringer*, ¶¶ 7–8. The developer then revoked the amendment, and the district court dismissed the case as moot. *Heringer*, ¶¶ 11–12. The owners appealed, arguing the voluntary cessation exception should have applied. *Heringer*, ¶ 17. This Court affirmed, concluding that the exception did not apply where the developer had "consistently maintained" that it had engaged in the challenged conduct for specific reasons which since had been resolved, that the developer had "swor[n] under oath in an affidavit" that the amendment was no longer needed and would not be repeated, and that the developer made further assurances on appeal that it would not repeat the conduct. *Heringer*, ¶¶ 23–24. We agreed that the

9

developer had carried its burden by providing such assurances, which "provided strong evidence that subsequent events had made it absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Heringer*, ¶¶ 23–24.

¶15   Wilkie's complaint sought declaratory relief that The Hartford had a duty under Montana law as an insurer to release policy information prior to litigation when the insured's liability is reasonably clear. Wilkie submitted evidence supporting his claim that it is "reasonable to expect the same wrong to recur, such that a ruling on the merits would be of discernible future benefit to the litigants or the interests of judicial economy." *Montanans Against Assisted Suicide*, ¶ 15 (quoting *Havre Daily News*, ¶¶ 38–40, and noting the application of the exception "where the reasonableness of such recurrence is supported by evidence, rather than speculation or allegation alone"). Wilkie filed two declarations from personal injury attorneys in Montana, discussing their experience with insurers—including The Hartford—declining to provide insurance policy information prior to suit and the reasons why injured parties and their lawyers have need for this information.[4] The Hartford did not respond with any showing that such conduct will not recur. *Compare Heringer*, ¶ 23. The Hartford has at no point even acknowledged that it carries

---

[4] We find unpersuasive The Hartford's contention that, pursuant to *Stowe*, ¶ 12, we should not consider the declarations because the "focus of a Rule 12(b)(1) motion to dismiss . . . is whether the court has the threshold authority to hear and adjudicate the type of claim at issue on the facts pled." "A court also has discretion to receive evidence of facts bearing on the M. R. Civ. P. 12(b)(1) motion and determine that it lacks subject-matter jurisdiction based on that evidence." *Harrington v. Energy West Inc.*, 2015 MT 233, ¶¶ 9–10, 380 Mont. 298, 356 P.3d 441 (citing *In re Marriage of Sampley*, 2015 MT 121, ¶ 9, 379 Mont. 131, 347 P.3d 1281). In *Heringer*, ¶¶ 23–24, we considered evidence outside the facts pled when determining whether there was a likelihood of recurrence, including an affidavit by the defendant indicating that "there [was] no longer any need for two associations, and he will not need to split the associations again in the future."

10

the burden "of demonstrating 'the challenged conduct cannot reasonably be expected to start again.'" *Heringer*, ¶ 20 (citing *Havre Daily News*, ¶ 34). Unlike in *Heringer*, where the defendant made various assurances that it would not repeat the challenged conduct, The Hartford has markedly *not* stated that the challenged conduct will not or cannot recur. *Havre Daily News*, ¶ 34.

¶16 Second, The Hartford's reliance on *Havre Daily News* is misplaced. That case involved a newspaper's request for an unredacted police incident report from a city police department. *Havre Daily News*, ¶ 6. After the newspaper filed suit, the city provided it with the unredacted report, and the district court ruled that the case was moot and non-justiciable. *Havre Daily News*, ¶¶ 7–8. The newspaper appealed, arguing that the case was not moot because, though the city could not repeat the identical behavior complained of, it likely would encounter similar obstructions in the future. *Havre Daily News*, ¶ 30. We explained that:

> In the context of cases alleging an unconstitutional deprivation of access to (purportedly confidential) criminal justice information, when a plaintiff points to only a single instance of an agency's withholding a document and later disclosing the same after suit has been filed, the case will generally not fall within the "voluntary cessation" exception to mootness. In such a case, it is not generally reasonable to expect the "same wrong" to recur, such that a ruling on the merits would be of any discernible future benefit to the litigants or the interests of judicial economy. . . .

> If, however, a plaintiff could show that the same agency has repeatedly withheld documents (or information contained within documents) from public disclosure and then fully disclosed those same documents upon the plaintiff's filing suit to enforce its right to know, the agency would shoulder a very heavy burden in attempting to persuade this Court that the "challenged conduct cannot reasonably be expected to recur." . . . Thus, it becomes reasonable to expect that if a substantially similar situation occurs, the agency will repeat the obstructive tactics that the plaintiff challenges,

perpetrating a substantially similar, though not identical, wrong. In such cases, final judicial adjudication may provide useful guidance that may obviate future violations of the right to know.

*Havre Daily News*, ¶¶ 38–39 (quoting *Laidlaw*, 528 U.S. at 189, 120 S. Ct. at 708). Because the newspaper's allegations of other conduct were only "conjectural" and "conclusory," and because the competing constitutional interests at issue would require a unique fact-dependent inquiry in each future case, we concluded that any future conduct would not be "substantially similar" and the voluntary cessation exception could not apply under the circumstances. *Havre Daily News*, ¶ 40 (citing *Missoulian v. Bd. of Regents of Higher Educ.*, 207 Mont. 513, 529, 675 P.2d 962, 971 (1984)); *see also Heringer*, ¶ 21 (explaining that the "single instance" rationale from *Havre Daily News* "may not carry great weight or be dispositive in every case" because "the relevance of such an inquiry depends on the circumstances of the case"; the rationale was relevant there where the issues involved "a heavily fact-dependent inquiry").

¶17 Because *Havre Daily News* discussed the "single instance" in the context whether the particular challenged conduct was likely to recur, the circumstances of this case likewise drive the analysis whether the conduct Wilkie challenges cannot or will not recur. *Havre Daily News*, ¶ 40; *Heringer*, ¶ 21. The Hartford incorrectly argues that Wilkie had the burden to show its conduct will recur, instead of responding with any explanation or showing why it will not.

¶18 Finally, The Hartford responds to Wilkie's claim on the merits, justifying its withholding of policy information by noting its duty to protect the confidential information of its insureds. Recall that The Hartford did not actually voluntarily cease its conduct—

12

rather, it pointed to the Sprouts' voluntary production of the Policy as the mootness trigger. The Hartford's position demonstrates that its actions likely are not unique to the Sprouts' policy and will continue. *See Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1194 (9th Cir. 2000) (quoting *White v. Lee*, 227 F.3d 1214, 1243 (9th Cir. 2000)) (noting that "the voluntariness of the cessation is a factor" in determining mootness, and that the claim in *White* was moot "because it was clear that the agency's voluntary change in position was 'a permanent change' in the way it did business and was not 'a temporary policy that the agency will refute once this litigation has concluded'").

¶19 The District Court thus erred by falling to apply the voluntary cessation exception to the mootness doctrine and dismissing the claims against The Hartford. We do not address the merits of Wilkie's claims but remand for the District Court to consider them in the first instance.

## CONCLUSION

¶20 The District Court improperly dismissed The Hartford from the action because the defendant did not meet its burden under the voluntary cessation exception to mootness. We accordingly reverse that portion of the District Court's order and remand for additional proceedings consistent with this Opinion. We affirm the District Court's dismissal of the Sprouts.

/S/ BETH BAKER

13

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR